# Attachment 1



No. _____ 77640

| | | |
|---|---|---|
| **DONALD L. CARUTH** | § | |
| *Plaintiff,* | § | IN THE DISTRICT COURT |
| | § | |
| **v.** | § | 196th JUDICIAL DISTRICT |
| | § | |
| **TEXAS A&M UNIVERSITY –** | § | |
| **COMMERCE and DAN R. JONES, as** | § | HUNTY COUNTY, TEXAS |
| head of Texas A&M University - Commerce | § | |
| | § | |
| *Defendants.* | § | JURY DEMANDED |

---

## ORIGINAL PETITION AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Donald L. Caruth complains of Texas A&M University - Commerce's violations of state and federal law barring discrimination because of age and/or disability and outlawing retaliation for protected activity. Caruth's claims come under the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE § 21.001, *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, *et seq.*

### I.    DISCOVERY CONTROL PLAN

1.    Caruth intends to conduct discovery under Discovery Control Plan - Level 3 in accordance with Texas Rule of Civil Procedure 190.4.

### II.    PARTIES, JURISDICTION AND VENUE

2.    Dr. Donald L. Caruth is a male resident of Rockwall, Rockwall County, Texas, and is a qualified person with a disability. His date of birth is September 22, 1935.

SCANNED

3.     Defendant Texas A&M University - Commerce ("TAMU-Commerce" or "the University"), part of the Texas A&M University System, is a state-run institution organized under the laws of the State of Texas. TAMU-Commerce is located in Commerce, Hunt County, Texas, and was authorized to and doing business in Texas, including by employing Caruth and others in Texas, at all times material to Caruth's claims. The causes of actions asserted in this petition arose from and are connected to purposeful acts by TAMU-Commerce and its agents during Caruth's employment. TAMU-Commerce may be served with process on its President and Chief Executive Officer, Dr. Dan R. Jones, 2600 South Neal Street, Commerce, Texas 75428.

4.     Dr. Dan R. Jones ("Jones") is the President and CEO of TAMU-Commerce. He is sued in his official capacity and can be served with process at his place of employment, 2600 South Neal Street, Commerce, Texas 75428.

5.     When Caruth alleges that TAMU-Commerce committed any act or omission, he means that TAMU-Commerce's officers, directors, principals, vice-principals, agents, servants, and/or employees committed such act or omission and that the TAMU-Commerce officer, director, principal, vice-principal, agent, servant, and/or employee committed the act or omission in the course and scope of his or her employment and with TAMU-Commerce's full authorization, ratification, and/or approval.

6.     According to Texas Civil Practice and Remedies Code § 30.004, Caruth has sent notice of this filing to Attorney General Greg Abbott at the Office of the Attorney General, P.O. Box 12548, Austin, Texas 78711-2548, by first-class, certified U.S. mail, return receipt requested.

7.     This court has jurisdiction to hear the merits of Caruth's claims because they arise under the laws of the State of Texas and/or are so related that they form part of the same case or controversy. The amount in controversy exceeds the court's minimum jurisdictional limits.

8.     A substantial portion of the acts and omissions giving rise to Caruth's claims occurred in Hunt County, Texas. Venue is proper in this district.

### III.    NATURE OF THIS ACTION

9.     This is an action under Chapter 21 of the Texas Labor Code to correct and remedy unlawful employment practices on the basis of disability, age, and/or protected activity by TAMU-Commerce, and to make Caruth whole for lost pay and benefits, damages and other losses, and fees, costs, and expenses due to TAMU-Commerce's discrimination and/or retaliation.  Caruth also brings claims under Title I of the Americans with Disabilities Act of 1990, as amended, and the Age Discrimination in Employment Act, as amended, for prospective relief to correct and remedy these unlawful employment practices.

### IV.    FACTUAL BACKGROUND

10.     Caruth is a Professor of Management in TAMU-Commerce's Department of Marketing and Management, College of Business and Technology (the "College"). He has more than 40 years experience in business and teaching, is a certified Senior Professional in Human Resources (the highest certification in that field), and holds a doctorate in Management. His primary teaching and scholarly interests are in human resource management, managerial strategy, and general business management. He has authored or co-authored more than a dozen books and several dozen articles on these topics.

11.     Caruth is also a person with a disability. In or about April 2008, Caruth's doctors diagnosed him with cancer, and he has since undergone pre-surgery radiation and chemotherapy,

surgery, and post-surgery chemotherapy. In addition to the cancer, he now suffers from ocular disease and low vision due to chemotherapy treatment. Caruth is therefore a person with physical and/or mental impairments that substantially limit one or more major life activities, he has a record of having such disabilities, and/or is regarded as having a disability within the meaning of the ADA and the TCHRA. His physical and/or psychological conditions substantially limit him in the major life activities of working and seeing, among others, and in the operation of one or more major bodily functions.

12.    Caruth was at all relevant times and is now a qualified individual with a disability under the ADA and TCHRA. He was at all relevant times and is now able to perform the essential functions of the job, either with or without reasonable accommodations. Further, TAMU-Commerce was aware of Caruth's disabilities and regarded him as having a disability.

13.    TAMU-Commerce was at all times relevant to Caruth's claims and is now an "employer" within the meaning of 29 U.S.C. §630(b), 42 U.S.C. § 12111(5), and TEX. LAB. CODE § 21.002(8).

14.    TAMU-Commerce employed Caruth from 1974 to 1975 and again from 1978 to 1980 as an Adjunct Professor, and then again from 1982 to 1986 as an Associate Professor of Management. Then, in or about 1986, TAMU-Commerce granted him tenure. Caruth held a tenured position as Professor of Management for more than a decade, from 1986 to 1997.

15.    After several years teaching at other local institutions, Dr. Keith McFarland, then-President of TAMU-Commerce, rehired Caruth in or about 2005. Over the next five years Caruth taught courses in Human Resources Management, Management Strategy, Compensation, Staffing, Management Skills Development, Current Issues in Human Resource Management, and Organizational Behavior, and was on track to obtain tenure, just as he had held tenure for the last

11 years of his prior stint with the University. According to Dean Hal Langford, Caruth, now 76, is the oldest member of the College of Business & Technology faculty. The next oldest is several years younger and most of Caruth's colleagues are significantly younger.

16.     Caruth consistently received high marks from supervisors and students alike over 23 years of teaching at TAMU-Commerce. As late as 2008 Caruth tied for the top student evaluations in the Marketing and Management Department. His last written evaluation, for 2009, rated Caruth as "Outstanding" in "Teach/Position Effectiveness," and his Department Chair, Lloyd Basham ("Basham"), described Caruth as the "strength within the Human Resources major...."

17.     In 2008, Caruth underwent cancer treatment, including chemotherapy and surgery. Caruth worked through the entire treatment period, missing no work while continuing to teach and perform at a high level. His supervisors rated him as 1.67 (Good/Excellent) for 2008 (with 1 being "Excellent" and 5 being "Poor").

18.     On or about March 30, 2009, in a Departmental Faculty meeting in the outer suite outside Caruth's office, Caruth informed the Department of Marketing and Management that he had been diagnosed with cancer back in April 2008 and had undergone treatment. He explained that the chemotherapy caused vision problems that made it extremely difficult to work on the computer for any length of time, which would make it extremely difficult to teach on-line courses. A member of the Department, Scott Sewell, indicated that teaching only face-to-face classes would not be a problem. Indeed, the Department assigned Caruth only face-to-face classes the remainder of that year. The issue came up in 2009 because then-Department-head Dr. Chris Myers ("Myers") had scheduled Caruth for on-line courses for the summer. Caruth reminded Myers that it was extremely difficult for him to teach on-line courses due to cancer

treatment and vision problems. On information and belief, Myers and others informed the Dean's office and/or TAMU-Commerce's administrative offices of Caruth's health issues and need for accommodation. Caruth never heard from anyone in the Department, the College, or University administration that teaching only face-to-face classes posed a problem until November 2010.

19.    On or about March 4, 2010, Dr. Harold Langford ("Hal Langford" or "Langford"), Dean of the College of Business and Technology, wrote to Dr. Larry Lemanski ("Lemanski"), Provost and Vice President for Academic Affairs, to recommend that TAMU-Commerce continue Caruth on probationary status:

> Dear Dr. Lemanski,
>
> The Faculty of the Department of Marketing and Management and Department Chair of the Tenure and Promotions Committee Dr. Mildred Pryor have recommended that Dr. Don Caruth be continued at the fifth year evaluation with no notes of concern… After careful consideration I concur with the department and recommend that Dr. Caruth be continued on probationary status.
>
> Sincerely,
>
> Hal Langford

Thus, the last indication that Caruth received prior to November 2010 was that his candidacy for tenure was on track and that there were "*no notes of concern*…."

20.    Dr. Mildred Pryor, Chair of the Department's Tenure and Promotions Committee, officed next to Caruth in 2010 and continues to do so today. In the fall of 2010, Caruth was standing in front of his office when Dr. Pryor emerged from her office. Exasperated, Pryor commented, "I don't know why they have to bring up age." On information and belief, Pryor was referring to the College and/or University administration and to promotion and tenure discussions.

21.    On or about November 16, 2010, Dean Langford, called Caruth at home to ask about Caruth's future teaching plans.  Langford opened the call by saying, "I wanted to find out what your plans are." Caruth replied that "[he] plan[ned] to teach as long as possible." Langford responded: "I don't know if that is going to be possible. You're up for tenure this year and I don't think you're going to make it. With everything going on-line, it's difficult to schedule courses."  Langford said that he needed someone "more flexible." The reference to on-line courses and to scheduling flexibility was a reference to Caruth's disabilities and the accommodation that Caruth not teach on-line classes. After a brief further discussion, including the possibility that Caruth would go Adjunct the next year, Langford agreed to follow up with Caruth after the Thanksgiving holiday.

22.    On or about November 24, 2010, Caruth submitted to the Provost's Office another request for reasonable accommodation due to vision troubles. Caruth's request sought (1) the help of a Graduate Assistant from another college to assist with grading, (2) permission not to attend low-light meetings and graduation, (3) face-to-face teaching assignments, and (4) computer enhancements, including an enlarged monitor. There was no immediate follow up even though Caruth was about to begin a new semester in January. After Caruth contacted the Provost's Office in early January 2011, he learned from Michelle Vieira ("Vieira") that portions of Caruth's request were approved. TAMU-Commerce again approved the face-to-face class assignment and excused Caruth from low-light and crowded events like graduation, but did not respond to his other requests.

23.    TAMU-Commerce failed to provide the Graduate Assistant and the University provided the enhanced computer screen only on April 14, 2011, several

months into the semester. In addition to unreasonably delaying accommodations, neither Vieira nor anyone else from the Provost's Office followed up with Caruth until *he* contacted Vieira on or about February 23, 2011, and again on or about April 5, 2011, about these items. The pattern of unexplained delay continued into the Summer 2011 sessions and Fall 2011 session. TAMU-Commerce is deliberately delaying provision of these reasonable accommodations in order to make it more difficult for Caruth to successfully complete his teaching assignments and/or to discourage him from continuing to teach.

24.     Dean Langford called Caruth again the Tuesday after graduation when TAMU-Commerce, through Langford, offered Caruth a two-year contract. Caruth declined the offer so that he could see the tenure process through.

25.     In January 2011, after discussions with Dean Langford, Caruth submitted his tenure application and package. Page 5 of the packet noted how "[Caruth's] dedication to the University and [his] commitment to [his] students enabled [him] to continue during pre-surgery radiation and chemotherapy, surgery, and post-surgery chemotherapy without missing a class" but that "[u]nfortunately, as a result of chemotherapy [Caruth was] experiencing neuropathy and low vision." Page 9 included a copy of the January 7, 2011 letter from Department Chair Basham in which Basham commented favorably on Caruth's abilities as an instructor.

26.     In or about November 2010, two members of the Marketing and Management Department, including Dr. Pryor, issued advisory opinions recommending Caruth for a tenured appointment. In or about December 2010, another department member, Dr. Myers, issued an advisory opinion recommending Caruth. On or about

January 19, 2011, the College of Business and Technology's Tenure & Promotion Committee voted to approve Caruth's tenure request.

27.    On or about February 7, 2011, Caruth received a copy of a letter from Dean Langford to Provost Lemanski:

> Dear Dr. Lemanski,
>
> It is with great pleasure that I recommend Dr. Don Caruth for tenure. Dr. Caruth was a Full Professor and Tenured at this university prior to his retirement. He returned to us six years ago and has provided leadership in his teaching and also has worked with junior faculty in his area of research. *The faculty in his department as well as the College of Business and Technology Tenure and Promotion Committee voted to grant Dr. Caruth tenure.*
>
> Sincerely,
>
> Hal Langford

(Emphasis added.)

28.    A little more than one month later TAMU-Commerce denied Caruth's tenure application in spite of the acknowledged support of his Department and the College Dean. On or about March 15, 2011, Caruth received a letter from Provost Lemanski. Dr. Lemanski stated that he was recommending denial of Caruth's tenure application and that Caruth be given a terminal, one-year contract for the 2011-2012 academic year. Lemanski falsely claimed that he based his recommendation on TAMU System Policy, as well as advisory opinions and recommendations of his department head and dean. Otherwise, Lemanski gave no reason for denying Caruth's application and recommending against him. The Provost's explanation was false and a pretext for unlawfully discriminating and/or retaliating against Caruth.

29.    On or about April 5, 2011, University President Jones notified Caruth by certified mail that Caruth's employment would terminate on May 31, 2012 and that

TAMU-Commerce would not extend an offer of reappointment. Dr. Jones, like Lemanski before him, gave no reason for the tenure denial. Because Caruth is the oldest faculty member in the Department, and TAMU-Commerce will replace him with a younger professor. On information and belief, Caruth's replacement will be a non-disabled, younger professor.

30.    Denial of tenure is not just the rejection of a candidate for promotion. It is a rejection of the person as an academic and as a teacher, and is a potentially career-ending event for a professor. TAMU-Commerce's discriminatory and/or retaliatory denial of Caruth's application for tenure inflicted substantial harm—personal, professional, economic and non-economic.

31.    TAMU-Commerce's Academic Freedom, Tenure, Promotion, and Post Tenure Review Policy entitles tenure applicants, upon written request, to a statement of the reasons that contributed to a negative tenure and/or promotion decision. On or about April 15, 2011, Caruth sent a letter to Lemanski by U.S. mail and e-mail, with copy to Dean Langford and Department Head Lloyd Basham, "requesting a written statement of the reasons that contributed to the denial of [his] application for tenure." TAMU-Commerce ignored Caruth's request and is in violation of its own policies. This failure to provide an explanation is evidence of pretext. Because TAMU-Commerce failed to give a reason for the tenure denial when asked in writing, its later attempt to produce a non-discriminatory and/or non-retaliatory reason for the decision is further evidence of pretext.

32.    On or about April 29, 2011, Caruth jointly filed a charge of discrimination and retaliation against TAMU-Commerce with the United States Equal Employment

Opportunity Commission and the Texas Workforce Commission–Civil Rights Division. On or about September 28, 2011, the EEOC issued a notice of right to sue. Caruth files this complaint within 90 days of receiving the EEOC right-to-sue notice. He has met and exhausted all administrative prerequisites to his age, disability, and retaliation claims.

## IV.    CAUSES OF ACTION

### A.    COUNT ONE:    DISABILITY DISCRIMINATION UNDER THE TCHRA AND ADA

33.    Caruth incorporates by reference Paragraphs 1 through 32.

34.    TAMU-Commerce is subject to Chapter 21 of the Texas Labor Code.

35.    Caruth has one or more disabilities within the meaning of the ADA and the TCHRA that substantially limit(s) one or more major life activities, including, *inter alia*, walking and standing; he has a record of such disability; and/or TAMU-Commerce regarded him as having such disability.

36.    TAMU-Commerce's actions constitute unlawful discrimination in violation of the Texas Labor Code, TEX. LAB. CODE § 21.051, and the ADA, 42 U.S.C. § 12112. Among other actions, TAMU-Commerce denied Caruth's tenure application, placed him on a terminal contract, and refused to renew his contract because of his disabilities, despite the fact that he is a qualified individual with disabilities who was and is able to perform the essential functions of his job, either with or without reasonable accommodations.

37.    TAMU-Commerce violated the Texas Labor Code and the ADA by, *inter alia*, (a) refusing and failing to provide Caruth with equal terms and conditions of employment, workplace and promotional opportunities, and other advantages and privileges of employment provided to non-disabled employees; (b) failing and refusing to provide reasonable accommodations; (c) terminating Caruth because of his disabilities; and (d) failing to take

prompt and equitable steps to remedy discrimination.  TAMU-Commerce's unlawful actions were intentional.

38.    Caruth is entitled to be made whole for any loss caused by TAMU-Commerce's discrimination. He seeks equitable relief necessary to return him to the position that he would have held absent TAMU-Commerce's unlawful discrimination.

39.    TAMU-Commerce's discrimination caused Caruth to suffer—and he expects to suffer—pecuniary losses, including but not limited to, lost wages and other benefits associated with employment.

40.    As a further result of TAMU-Commerce's discrimination, Caruth has suffered—and continues to suffer—non-pecuniary losses including, *inter alia*, humiliation, damage to professional and personal reputation, undue stress, anxiety, mental distress and anguish, and other non-pecuniary losses.  Caruth seeks compensatory damages under TEXAS LAB. CODE §21.2585 and 42 U.S.C. § 1981a.

41.    TAMU-Commerce acted at all relevant times with malice and/or reckless indifference to Caruth's rights under state law. He therefore seeks punitive damages under TEXAS LAB. CODE §21.2585 and 42 U.S.C. § 1981a.

42.    TAMU-Commerce's discrimination forced Caruth to retain counsel in order to redress the harm done to him. Consequently, Caruth seeks his attorney's fees, expert costs, and other litigation expenses under TEXAS LAB. CODE § 21.259 and 42 U.S.C. § 1988.

**B.    COUNT TWO:    AGE DISCRIMINATION UNDER THE TCHRA AND THE ADEA**

43.    Caruth incorporates by reference Paragraphs 1 through 42.

44.    Caruth is over 40 years of age and therefore protected by the TCHRA. TAMU-Commerce's actions constitute unlawful discrimination in violation of the Texas Labor Code,

TEX. LAB. CODE § 21.051, and the ADEA, 29 U.S.C. § 623(a)(1). Among other actions, TAMU-Commerce denied Caruth's tenure application, placed him on a terminal contract, and refused to renew his contract because of his age. TAMU-Commerce's unlawful actions were intentional.

45.     Caruth is entitled to be made whole for any loss caused by TAMU-Commerce's discrimination. He seeks equitable relief necessary to return him to the position that he would have held absent TAMU-Commerce's unlawful discrimination.

46.     TAMU-Commerce's discrimination caused Caruth to suffer—and he expects to suffer—pecuniary losses, including but not limited to, lost wages and other benefits associated with employment.

47.     As a further result of TAMU-Commerce's discrimination, Caruth has suffered—and continues to suffer—non-pecuniary losses including, *inter alia*, humiliation, damage to professional and personal reputation, undue stress, anxiety, mental distress and anguish, and other non-pecuniary losses.   Caruth seeks compensatory damages under TEXAS LAB. CODE §21.2585.

48.     TAMU-Commerce acted at all relevant times with malice and/or reckless indifference to Caruth's rights under state law. He therefore seeks punitive damages under TEXAS LAB. CODE §21.2585.

49.     TAMU-Commerce acted willfully under 29 U.S.C. § 626(b), entitling Caruth to liquidated damages.

50.     TAMU-Commerce's discrimination forced Caruth to retain counsel in order to redress the harm done to him. Consequently, Caruth seeks his attorney's fees, expert costs, and other litigation expenses under TEXAS LAB. CODE § 21.259 and 29 U.S.C. § 626(b).

### C.   **COUNT THREE:  RETALIATION UNDER THE TCHRA AND THE ADA**

51.   Caruth incorporates by reference Paragraphs 1 through 50.

52.   Caruth engaged in protected activity, *inter alia*, in or about March 2009 and again in or about November 2010 by requesting reasonable accommodations for his disabilities.

53.   TAMU-Commerce's actions constitute unlawful discrimination in violation of the Texas Labor Code, Tex. Lab. Code § 21.051, and the ADA, 42 U.S.C. §§ 12203. Among other actions, TAMU-Commerce denied Caruth's tenure application, placed him on a terminal contract, and refused to renew his contract because of his protected activity.

54.   TAMU-Commerce violated the Texas Labor Code and the ADA by, *inter alia*, (a) refusing and failing to provide Caruth with equal terms and conditions of employment, workplace and promotional opportunities, and other advantages and privileges of employment provided to non-disabled employees; (b) retaliating against Caruth for requesting reasonable accommodations, for asserting his rights, and/or for interfering or intimidating him from taking such actions; (c) terminating Caruth because of his protected activity; and (d) failing to take prompt and equitable steps to remedy discrimination and retaliation. TAMU-Commerce's unlawful actions were intentional.

55.   Caruth is entitled to be made whole for any loss caused by TAMU-Commerce's retaliation. He seeks equitable relief necessary to return him to the position that he would have held absent TAMU-Commerce's unlawful retaliation.

56.   TAMU-Commerce's retaliation caused Caruth to suffer—and he expects to suffer—pecuniary losses, including but not limited to, lost wages and other benefits associated with employment.

57.    As a further result of TAMU-Commerce's retaliation, Caruth has suffered—and continues to suffer—non-pecuniary losses including, *inter alia*, humiliation, damage to professional and personal reputation, undue stress, anxiety, mental distress and anguish, and other non-pecuniary losses.  Caruth seeks compensatory damages under TEXAS LAB. CODE §21.2585 and 42 U.S.C. § 1981a.

58.    TAMU-Commerce acted at all relevant times with malice and/or reckless indifference to Caruth's rights under state law. He therefore seeks punitive damages under TEXAS LAB. CODE §21.2585 and 42 U.S.C. § 1981a.

59.    TAMU-Commerce's retaliation forced Caruth to retain counsel in order to redress the harm done to upon him. Consequently, Caruth seeks his attorney's fees, expert costs, and other litigation expenses under TEXAS LAB. CODE § 21.259, 42 U.S.C. § 1988, and 29 U.S.C. § 626(b).

**D.    COUNT FOUR:  DISCRIMINATION AND RETALIATION UNDER THE ADA AND ADEA AGAINST THE UNIVERSITY'S PRESIDENT**

60.    Caruth incorporates by reference Paragraphs 1 through 59.

61.    TAMU-Commerce violated the ADA, as amended, and the ADEA by discriminating against Caruth because of his age and/or disability, despite the fact that he was a qualified individual who was, and remains, able to perform the essential functions of his job, either with or without reasonable accommodations.  Further, TAMU-Commerce violated the ADA, as amended, by retaliating against Caruth for his protected activity.  TAMU-Commerce intentionally committed these unlawful employment practices.

62.    As a consequence of these ADA and ADEA violations, Caruth is entitled to prospective injunctive relief against Defendant Jones in his official capacity. Caruth is also entitled to recover his reasonable attorney's fees, costs, and litigation expenses.

## IV.    __JURY DEMAND__

63.    Caruth requests a jury trial on all issues and claims in this case.

## V.    __PRAYER FOR RELIEF__

WHEREFORE, Caruth prays that TAMU-Commerce be summoned to appear and answer, and that on final trial, judgment be granted against TAMU-Commerce, awarding Caruth the following:

a.    Back pay, including but not limited to, lost wages and other employment benefits;

b.    Equitable relief necessary to place Caruth in the position that he would have held but for TAMU-Commerce's discrimination and/or retaliation; and, if such relief be infeasible, front pay;

c.    Injunctive relief necessary to permanently and forever enjoin TAMU-Commerce from discriminating and retaliating against Caruth and others;

d.    Actual damages;

e.    Compensatory and/or punitive damages;

f.    Liquidated damages;

g.    Prejudgment and post-judgment interest;

h.    Attorney's fees, expert fees, and costs of suit; and

i.    Other legal and equitable relief to which Caruth may justly be entitled.

DATED:  December 27, 2011

Respectfully submitted,

GILLESPIE, ROZEN, WATSKY & JONES, P.C.
3402 Oak Grove Avenue, Suite 200
Dallas, Texas  75204
Tel.:    (214) 720-2009
Fax:    (214) 720-2291

By: _____
        Hal K. Gillespie
        *Attorney-in-Charge*
        Texas Bar No. 07925500
        hkg@grwlawfirm.com
        James D. Sanford
        Texas Bar No. 24051289
        jsanford@grwlawfirm.com

ATTORNEYS FOR PLAINTIFF
DONALD L. CARUTH

A CERTIFIED COPY
ATTEST
STACEY LANDRUM, DISTRICT CLERK
HUNT COUNTY, TEXAS
This is a True and Correct Copy of Original on
File in the Hunt County District Clerk's Office.
By _____ Deputy